EXHIBIT A

Dana J. Lent 6-3832
108 East 20th
Torrington, WY 82240
307-532-7900

IN THE DISTRICT COURT OF THE EIGHTH JUDICIAL DISTRICT
OF THE STATE OF WYOMING IN AND FOR GOSHEN COUNTY
Civil No. CJ-2011-5?-DC

ALLAN RISING, )
 )
       Plaintiff, )
 )
v. )
 )
PURELINE TREATMENT CENTERS, a )
subsidiary of RESONANT )
BIOSCIENCES, LLC, in their official )
capacities, jointly and severally, Steve )
Grassbaugh, Vice President, Finance & )
Administration, Resonant BioSciences, )
Tom O'Connell, Board Member, Resonant )
BioSciences, and Bob Sullivan, Sales )
Manager, Resonant BioSciences, )
       Defendants. )

**FILED**
MAR - 4 2011
BONNIE PETSCH
CLERK OF DISTRICT COURT, GOSHEN, CO

## COMPLAINT FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT

COMES NOW Plaintiff, Allan Rising, by and through his attorney, Dana J. Lent, and for his complaint against Defendants, Resonant BioSciences, LLC, Steve Grassbaugh, Vice President, Finance & Administration, Resonant BioSciences, Tom O'Connell, Board Member, Resonant BioSciences, and Bob Sullivan, Sales Manager, Resonant BioSciences ("Company") hereby states and alleges the following:

1. Plaintiff is a resident of Goshen County, Torrington, Wyoming.

2. Defendants are doing business in Wyoming and contracted with Plaintiff for employment services based in Torrington, Goshen County, Wyoming.

3. This Court has personal and subject-matter jurisdiction in this matter.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

4. On September 22, 2009, Defendants, Resonant BioSciences, LLC offered employment to Plaintiff as a Technical Application Manager. (Attached hereto as Exhibit A). Resonant BioSciences, LLC is a subsidiary company of PureLine Treatment Centers.

5. On September 24, 2009, Plaintiff accepted the terms of employment outlined in the offer of employment letter and the *Resonant BioSciences, LLC Employment Agreement* (attached hereto as Exhibit B). The employment agreement is signed by Plaintiff, Allan Rising and Defendant, Steve Grassbaugh, Vice President, Finance & Administration, Resonant BioSciences, LLC.

6. Plaintiff was an "at will" employee and on February 2, 2011 received notice from Company that his employment was terminated.

7. The terms of Plaintiff's employment required him to travel to industrial plants in the fuel ethanol, beverage, pharmaceutical, food processing and cellulosic ethanol industries to evaluate customer procedures and recommend Company products to increase customer's procedural efficiency.

8. Resonant BioSciences, LLC's offer of employment letter delineated specific obligations to be fulfilled by Company, including "Resonant will provide a company vehicle and will reimburse all related expenses." (Exhibit A, page 2).

9. Defendants failed to provide Plaintiff with a company vehicle pursuant to the terms outlined in the offer of employment. A vehicle was necessary for Plaintiff to perform and fulfill the requirements of his position as Technical Applications Manager, so Plaintiff obtained a vehicle.

10. Plaintiff bore all expenses associated with purchasing, insuring and maintaining the vehicle. Plaintiff further advertised for Company by applying Company logos and designations on the vehicle at Company's request.

11. Plaintiff requests reimbursement for all expenditures used for purchasing, insuring and maintaining the vehicle during his employ with the company, in the amount of thirty-five thousand dollars ($35,000.00).

12. Further, Defendants breached their duty of good faith and fair dealing in the *Resonant BioSciences, LLC Employment Agreement*.

13. The *Resonant BioSciences, LLC Employment Agreement* is replete with requirements governing employee conduct for regarding Resonant BioSciences intellectual property and confidential information. The majority of the agreement sets forth Company's expectation of good faith and fair dealing regarding employees and Company. These specific

provisions in the *Resonant BioSciences, LLC Employment Agreement* are reasonably extended to Company's expectation of an employee when dealing with customers's intellectual property and proprietary and confidential information.

14. The employment agreement creates a clear expectation regarding industry standards for intellectual property, confidential information, and proprietary information, in consideration of Company's position of authority over customers when evaluating customers' unique processes and procedures.

15. During the course of his employment, and as a necessary part of his employment, Plaintiff was privy to the customer's unique industry procedures, chemical procedures and the specific strains of microbes (yeast) used by each customer as an integral part of the manufacture of each customer's product.

16. In his official capacity and on behalf of Company, Defendant, Bob Sullivan, Plaintiff's direct supervisor, and salesman for Resonant BioSciences, LLC, demanded that Plaintiff use his position to surreptitiously obtain yeast samples from customer's facilities, ostensibly to advance Company's development of organism and technological bundled services. Defendant Sullivan's demand was in direct contrast to the expectation of conduct regarding intellectual property, confidential information, and proprietary information created by the offer of employment letter and *Resonant BioSciences, LLC Employment Agreement* regarding such conduct.

17. Defendants further breached the *Resonant BioSciences, LLC Employment Agreement* by terminating Plaintiff's employment for refusing to engage in such behavior. As a result of Company's breach of the employment agreement, Plaintiff was deprived of income in the amount fifty-two thousand dollars ($52,000.00)[1].

18. Plaintiff submits that Company's actions in this respect warrant an assessment of punitive damages, and Plaintiff seeks such an award.

19. Plaintiff's salary demand is based on Company's measurement of Plaintiff's employment, vacation accrual, and benefit packages in years as outlined in the Resonant BioSciences, LLC Employment Agreement and offer of employment letter.

## SECOND CAUSE OF ACTION

---

[1] Plaintiff's yearly income is approximately $90,000.00. Plaintiff was hired in the month of September (2009) and was dismissed in February (2011). Plaintiff worked 5 months of the year (September-September) resulting in an expectation of 7 months pay of $52,000.00.

## UNJUST ENRICHMENT

20.   The allegations set forth in the paragraphs above, all inclusive, are realleged and incorporated herein.

21.   Defendants were unjustly enriched by their breach of the contract and Plaintiff's purchase and maintenance of a vehicle that was required to perform his job and fulfill the terms of his employment.

22.   Defendants received the benefit of Plaintiff's purchase of a vehicle used to carry out company business, in excess of thirty-five thousand dollars ($35,000.00)

23.   The value of the vehicle, maintenance, wear and tear, resale value, and cost of insurance, and advertising is thirty-five thousand dollars ($35,00.00).

24.   Defendants have failed to pay the aforementioned amount to Plaintiff which resulted in Defendant being unjustly enriched in the amount of thirty-five thousand dollars ($35,000.00) at Plaintiff's expense.

25.   Defendants were further enriched in the amount of fifty-two thousand dollars ($52,000.00), the minimum amount Plaintiff would have received if Defendants' had not breached the term of good faith and fair dealing in the Resonant BioSciences, LLC Employment Agreement and offer of employment letter.

26.   Plaintiff requests, and is entitled to, pre-judgment and post-judgment interest.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants pursuant to W.S. §1-1-115 in the total amount of EIGHTY SEVEN THOUSAND DOLLARS NO/00 ($87,000.00), plus pre-judgment interests, costs, attorney fees, punitive damages, and for any such and further relief and the Court deems fair and just.

FURTHER, Plaintiff requests a judgment against Defendants in the amount of EIGHTY SEVEN THOUSAND DOLLARS NO/100 ($87,000.00) plus interest, attorney fees, costs, and for any such other relief as the Court deems fair and just.

DATED this __4__ day of March 2011.

*[signature]*
Dana J. Lent
Attorney for Plaintiff
KNUDSEN LAW OFFICES
108 East 20th
Torrington, WY  82240
PH: (307) 532-7900
FAX: (307) 532-8585

**SERVED WITH SUMMONS**



Resonant BioSciences, LLC
1757 W Ken Gary Ave, [illegible]
[illegible], CO 80127
[illegible contact info]

September 22, 2009

Mr. Allan L. Rising
121 Hillcrest Drive
Torrington, Wyoming 82240

Dear Mr. Rising:

I am very pleased to extend an offer of employment as Technical Applications Manager for Resonant BioSciences, LLC based in Torrington, Wyoming. In this position, you will report directly to Allen Ziegler, President. Your official start date under the attached Employment Agreement, which this offer letter is made a part of, will be on or about October 1, 2009.

The specific terms of the Resonant employment offer are as outlined below:

- Your starting base pay rate (as a full-time exempt employee) will be $7,125.00 per month and is subject to all applicable state and federal tax related withholdings. You will be paid twice per month at the rate of $3,562.50 per pay period before taxes and any other applicable withholdings are made. Resonant employees are paid on the 15th and last day of each month.

- You will be immediately eligible to receive commissions, on a per account basis, on sales of Resonant technology and products sold via your direct effort and or contacts.

- You will be eligible to enroll and make payroll deducted pre-tax employee contributions to the Resonant 401K plan managed by Paychex and Merrill Lynch. Should you enroll, Resonant matches your personal pre-tax contribution in the plan at a level of $0.50 on each dollar you contribute up to a maximum of 2%. For example, if you contributed 4% of your base pay in pre-tax dollars, Resonant would match that at a rate of 2%. If you contributed 5%, Resonant would match 2%. The employers (Resonant) match contribution vests over a five-year period (20% per year with the first 20% vested after 12 months enrollment and active participation in the plan) under the terms and conditions of the plan. Additional information on this 401K plan may be obtained through Steve Grassbaugh. Enrollment and all terms and conditions of the 401K plan are governed by the plan. You will be

**EXHIBIT A**



Resonant BioSciences, LLC
[address illegible]
Littleton, CO 80127

[phone illegible]
[phone illegible]
[web illegible]

eligible to participate on the first day of the month following 60 days of continuous employment.

- You will be eligible to enroll for medical and dental employee/family insurance coverage under each of the terms and conditions of the benefit plans currently offered through the Resonant medical and dental policies. The Company reserves the right to make amendments to the insurance coverage at all times. Should you enroll, you will be responsible for certain co-pays and deductibles under the terms of the plan that you choose to enroll in. Coverage will be effective on the first day of the month following 60 days of continuous employment.

- Resonant will reimburse interim medical insurance premiums (COBRA) via expense report with submission of receipt.

- Resonant reimburses all reasonable business expenses upon the submission of receipts, appropriate documentation and approval of your supervisor, per company policies.

- Resonant will provide a company vehicle and will reimburse all related expenses.

- Resonant provides its employees with 10 paid holidays per calendar year. You will earn 2 weeks paid vacation beginning with and during your first year of employment, which will accrue monthly at 6.67 hours. After five years of employment, you will earn 3 weeks paid vacation annually, which will accrue at 10 hours monthly.

All the terms and conditions of your employment with Resonant are governed by the Resonant Employment Agreement attached hereto, which must be executed and signed as a condition of employment with Resonant. This offer letter, dated September 22, 2009, will be attached to and become Exhibit A. Make certain that you review the Employment Agreement. Your signature below confirms your acceptance of the terms and conditions of this offer letter of employment. A signed copy of this letter along with the signed Employment Agreement should be returned to me at your earliest convenience.

Finally, please note that by signing below you hereby acknowledge and understand that your status of employment with Resonant BioSciences, LLC will at all times be as an at-will employee under the laws of the State of California. This offer of employment, and your signature and acknowledgement below, does not in any way cause or create a contract of employment between the company and yourself. The at-will employee status means that



Resonant BioSciences, LLC
[address illegible]

your employment with the company may be terminated for any reason and at any time under the terms of the Employment Agreement.

Resonant will conduct a standard background check based upon the information you provided on the Employment Application and Disclosure and Authorization form. In addition, a pre-employment drug screening is required. This employment offer is contingent upon a satisfactory result from both the background check and drug screening.

We are delighted that you are joining Resonant and believe you will be very successful in your new position.

Sincerely,

Steve Grassbaugh
Vice President, Finance & Administration

Accepted: *Allan L. Rising*
Allan L. Rising

Date: 9-24-09

Resonant BioSciences, LLC

# EMPLOYMENT AGREEMENT

In consideration of the employment relationship created hereby, remuneration paid hereunder and the covenants set forth herein, Resonant BioSciences, LLC ("Resonant") and the individual signing below ("Employee") agree as follows:

## A. The Employment Relationship

1. Employee shall devote full time and best efforts to the affairs of Resonant and shall not engage in any other employment without the prior written consent of Resonant which consent shall not be unreasonably withheld.

2. Employee shall abide by the written employment policies set forth by Resonant and in each other publication of employment policies as may be published, amended or supplemented from time to time. In addition to any compensation paid to Employee, Employee may participate in the benefit plans of the Company referred to in the offer letter attached hereto (Exhibit A) in accordance with their terms; provided, however, Employee agrees that, except as to benefits in which Employee has become vested under a plan or as a matter of law, Resonant, in its sole discretion, may modify or eliminate any or all employment benefits or benefit plans which now or hereafter may exist.

3. If employee becomes employed by any subsidiary or affiliated company of Resonant, Resonant may assign this Agreement to such company and this Agreement shall be binding on such company and Employee as if those parties had entered into a separate Employment Agreement as of the effective date of employment with such company. Such company shall succeed to all the rights hereunder, including without limitation, this right of assignment.

4. If employed by Resonant in a sales, account executive, business development or sales management capacity, no commissions or bonuses, if applicable, shall be payable for sales which are not invoiced as of the date of the termination of employment with Resonant.

5. The employment relationship created hereby is at will. Employee may resign and Resonant may terminate Employee, in either case, at any time, with or without cause or notice.

6. Employee authorizes Resonant to withhold or offset any monies owed Employee, to be applied to any monies owed or potentially owed to Resonant.

EXHIBIT B

## B. Intellectual Property; Confidential Information

7. Employee shall not disclose to Resonant, or use on behalf of Resonant, any confidential or proprietary information obtained during and as a result of employment with any previous employer. The terms "confidential or proprietary information" in this context shall mean any prior employer's information that is (a) marked "confidential information" or "proprietary information", (b) any prior employer's information that is not in the public domain, and (c) information that otherwise is not a part of the public domain by publication or other means.

8. You hereby represent that, except as you have disclosed in writing to Resonant in the attached Disclosure Schedule, you are not a party to, or bound by the terms of, any agreement with or obligation to any previous employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of your employment with Resonant. You further represent that your performance of all the terms of this Agreement and as an employee of Resonant does not and will not breach any agreement or obligation to keep in confidence proprietary information, knowledge or data acquired by you in confidence or in trust prior to or during your employment with Resonant, and you will not disclose to Resonant or induce Resonant to use any confidential or proprietary information or material belonging to any previous employer or others with which you may have a confidentiality obligation.

9. Without additional consideration Employee shall promptly and fully disclose and assign throughout the world to Resonant and Employee hereby assigns all inventions, discoveries and improvements and invention notebooks arising out of, or in any way connected with, suggested by, or pertaining to Employee's employment with, or the business of Resonant made or conceived by Employee, solely or jointly with others, during employment with Resonant or within a period of one year after the termination of such employment. Employee excepts from this agreement the inventions or ideas listed on Appendix A. All inventions, discoveries and improvements covered by this Agreement shall be and remain Resonant's property, whether or not disclosed, assigned or patented.

10. Both during and after employment with Resonant, Employee shall assist Resonant in every proper way, without additional compensation other than reimbursement of reasonably incurred expenses, to obtain patents in any and all countries selected by Resonant on any inventions, discoveries or improvements covered by this Agreement.

    a) Employee recognizes that over many years and at great expense, Resonant has developed a large body of confidential or proprietary information and will continue to develop such information in the future. Employee agrees that all of the information Employee obtains during and as a result of Resonant's employment concerning (but not limited to) research and development efforts, features or methods of manufacture, processes, sales data, operating, profit, marketing and research plans, formulas, costs, training materials, treatment techniques, designs, computer software or hardware, customer proposals, customer and competitive information and financial and other projections relating

to any business or field of endeavor or investigation by Resonant and which Resonant has not otherwise made public, whether or not developed by Employee, is the property of Resonant and is considered by Resonant to be confidential or proprietary to it whether or not same are marked "Confidential."

b) Employee acknowledges that all of the information of the type referred to in paragraph 10(a) shall be received or developed and maintained by Employee in confidence and shall be used by Employee only so long as Employee is employed by Resonant and solely on behalf of Resonant.

c) Employee shall not copy or cause to be made any copies, facsimiles, recordings, reproductions, samples, abstracts or summaries of the types of information referred to in paragraph 10(a) or remove same from the premises of Resonant except as may be necessary for the proper performance of Employee's job. Upon termination of Employee's employment for any reason whatsoever, Employee shall immediately and without further request deliver all originals and copies, summaries, facsimiles, abstracts, recordings and reproductions of such information obtained during and as a result of such employment whether or not confidential or proprietary to Resonant and Employee shall not use such information for Employee's own benefit or for the benefit of any other person or entity or disclose any such information to any person or entity without the prior written consent of Resonant.

## C. Activities After Termination of Resonant Employment

11. As a result of employment with Resonant, Employee will obtain knowledge of the types of information referred to in paragraph 10(a) and of Resonant's customers, including without limitation, customer buying contacts, methods of operations, and product needs, and will develop goodwill and rapport with customers and prospective customers of Resonant. In many instances the individuals at Resonant's customers and prospective customers responsible for the purchase of the products, services and equipment sold by Resonant are also responsible for the purchase of products, service and equipment sold by Resonant's affiliated and subsidiary companies. Such information, goodwill and rapport, whether developed by Employee or by others in the Resonant organization are valuable assets of Resonant.

   a. In order for Resonant to protect such information and relationships, if Employee is employed by Resonant in a sales, account executive, business development or sales management capacity, then for the twelve (12) consecutive calendar months immediately following termination of Resonant employment (irrespective of the reason for such termination), Employee shall not directly or indirectly, for Employee's benefit or the benefit of any other person or entity, call upon, communicate or attempt to communicate with any customer or any active prospective customer or any representative of any customer or active prospective customer of Resonant with whom Employee had any contact, communication or for which Employee had supervisory responsibility during the twelve (12) consecutive calendar months preceding termination of Resonant employment if such contact or communication is with a view to or for the purpose of selling,

offering for sale, influencing the purchase of, or otherwise providing a chlorine dioxide or chlorine based product or like equipment directly competitive with a product or equipment sold, offered for sale, provided, or under development by Resonant. The twelve-month period referred to herein, shall be extended by one month for each month or portion of each month during which Employee is in violation of this paragraph 11(a).

b. For purposes of this paragraph 11, the phrase "active prospective customer of Resonant" shall include only those prospective customers to whom Resonant has made a written sales proposal during the twelve (12) consecutive calendar months preceding Employee's termination from Resonant, or from which Resonant has received a purchase order during such period, or Resonant or employee has made at least three documented sales visits. This paragraph clause 11(b) shall not preclude a terminated Employee from seeking or accepting employment in his/her field of expertise with any company, provided that such former Employee abides by the covenants herein.

12. If employed by Resonant in other than a sales, account executive, business development or sales management capacity, then for the twelve (12) consecutive calendar months immediately following termination from Resonant, Employee shall not accept or continue employment with or, as a self-employed person, act as a competitor of Resonant, if any part of the duties of such employment are such that Employee could reasonably be expected to reveal, base judgments upon or otherwise use any of Resonant's proprietary and confidential information or trade secrets.

13. During the term employee is employed by Resonant and for the twelve (12) consecutive calendar months immediately following termination of Employee's Resonant employment, Employee shall not induce, attempt to influence or solicit, either directly or indirectly, any other employee of Resonant or any affiliated or subsidiary company to terminate their employment with Resonant or such company, unless such other employee has previously terminated his/her employment relationship with Resonant and been unemployed from Resonant for a period of twelve (12) consecutive calendar months.

## D. Other Matters

14. Employee acknowledges that Employee was provided an unsigned copy of this Agreement in advance of accepting employment and was accorded ample opportunity to read and seek whatever counsel relative to the Agreement Employee may desire. Employee further acknowledges receipt of a signed copy of this Agreement and that Employee has read and understands all of its terms and conditions.

15. This, along with the attached signed employment offer letter (as Exhibit A) and signed and completed Disclosure and Authorization to Obtain Information form (as Exhibit B), is the entire agreement between the parties hereto regarding the employment relationship created hereby and may be amended only by an agreement in writing signed by both parties. No person below President shall have authority to sign any such amended agreement on behalf of Resonant. No terms or conditions of

the employment relationship, which may have been discussed prior to the execution of this Agreement, are part of the employment agreement between the parties hereto unless specifically set forth herein and/or signed by each of the parties and attached hereto as Exhibit A. This Agreement is not a promise of future employment. There are no previous or simultaneous oral or written representations, understandings or agreements with Resonant or any of its officers or representatives covering the employment of Employee. No custom, practice or policy of Resonant, whether or not in writing and whether now or hereafter existing is part or shall act to modify the terms of this Agreement or the employment relationship hereby established, unless otherwise such modifications are in writing, approved and signed by the President of Resonant and are specifically allowed under the terms of this Employment Agreement.

16. Employee hereby represents and warrants that no waivers and/or consents from third parties are necessary to enable him to enjoy employment with Resonant on the terms and conditions set forth herein or to execute and perform this Agreement without being in conflict with any other agreement, obligation or understanding with any such third party. Except as described on the attached Disclosure Schedule, the Employee represents that he is not bound by any agreement or any other existing or previous business relationship which conflicts with, or may conflict with, the performance of his obligations hereunder. Employee further represents that he is not bound by any agreement or any other existing or previous business relationship that requires Employee to refrain from competing, directly or indirectly, with the business of any previous employer or any other party. The Employee shall indemnify Resonant against any liability or expense relating from any willful breach by the Employee of the representations contained herein.

17. The provisions of this Agreement shall be severable and a determination that any provision or provisions hereof are invalid shall have no effect on any other provision hereof. It is the agreement of the parties hereto that in the event any provision or provisions hereof are determined to be invalid then such provision or provisions shall be reformed so as to be valid.

18. Employee's obligations set forth herein shall be binding upon Employee's heirs, executors, administrators or other legal representatives.

19. Resonant's failure at any time or from time-to-time to require performance of Employee's obligations under this Agreement shall not affect Resonant's right to enforce any provision of this Agreement at a subsequent time, and a waiver of any right arising out of any breach shall not be construed as a waiver of any right arising out of any subsequent breach.

20. In the event Resonant files suit against Employee to enforce any provision of this Agreement, or in the event Resonant is otherwise involved in litigation concerning Employee, and a court of competent jurisdiction finds in favor of Resonant on any matter, Employee shall reimburse Resonant its reasonable costs and attorneys fees incurred in maintaining such suit. In the event Employee files suit against Resonant to enforce any provision of this Agreement, or in the event Employee is otherwise

involved in litigation concerning Resonant, and a court of competent jurisdiction finds in favor of Employee on any matter, Resonant shall reimburse Employee its reasonable costs and attorneys fees incurred in maintaining such suit.

21. This Agreement shall terminate automatically any prior agreement (whether in writing or verbal) that has existed amongst the parties hereto including any Consulting Agreement that has existed between the parties, and this Agreement shall be the sole agreement between the parties hereto and shall be construed under and shall be governed by the laws of California. Resonant and Employee submit to the jurisdiction of the courts of California and agree that venue shall initially be in the courts of Orange County, California.

IN WITNESS WHEREOF, the parties, intending to be legally bound, hereunto set their hands, as of the date set forth next to Employee's signature below.

Signature: *Allan Rising*     Date: 9-24-09

Name: Allan Rising

Social Security No.: 505-74-06660

Resonant BioSciences, LLC

By: *[signature]*
   Steve Grassbaugh
   Vice President, Finance & Administration

Resonant BioSciences, LLC

**EXHIBIT A** – Insert signed and accepted Offer of Employment Letter

Resonant BioSciences, LLC

**Disclosure Schedule** (per paragraphs B. 8 and D. 16 of Employment Agreement):

Resonant BioSciences, LLC

**Appendix A** (Inventions and Ideas per paragraph B. 9 of Employment Agreement):